Taylor vs. Coon.

## TAYLOR, Respondent, vs. COON, Appellant.

*February 4 — February 24, 1891.*

*Appealable order: Contract of indemnity: Parties: Pleading.*

1. Although a motion to strike out a demurrer was noticed to be heard before the judge at chambers, yet an order made thereon which reads, "The court having heard the argument of the counsel of the

Taylor vs. Coon.

respective parties, it is ordered that said demurrer be, and the same is hereby, stricken from the files in this action," will be deemed to have been made upon a hearing by the court, and be held appealable.

2. A contract between stockholders of a company, by which each signer "agrees with all the others, and each with such stockholders" as now are or shall become liable upon the company's paper as indorsers or otherwise, "that each of said parties will so indemnify, protect and save harmless such stockholders," so liable or becoming liable on such paper, "in proportion of each of said stockholder's ownership of said stock, and to that end will, upon the demand of any one or more of said stockholders who shall be called upon as indorsers to pay such paper, contribute toward the payment thereof such sum as such party ought to contribute in proportion to the stock held by him," is to be construed as several, as respects each of the parties thereto; and any one of them who has a several valid claim under it against any other party liable thereon may maintain a separate action upon it against the party so liable, without joining the others.

3. Such contract is one merely to indemnify against loss or damage by reason of liability as indorser, and not one to indemnify against liability as such, and there is no breach, and no action can be maintained thereon, until the plaintiff has paid something or suffered some loss or damage by reason of his indorsement.

4. A delivery of such contract by one who has signed it to another of them is a consent that it shall be binding upon him, although it is not executed by all who are named therein as parties.

5. An allegation in a complaint upon such contract that the defendant, for a good and valuable consideration, executed and delivered the same to the plaintiff, shows that it was fully executed so far as the defendant is concerned.

6. Such contract is not one for the payment of money only, within the meaning of sec. 2675, R. S., and it is not sufficient for the plaintiff to give a copy thereof in his complaint, and state how much is due thereon.

7. A complaint on such contract must allege some payment made by plaintiff, or some loss or damage suffered by him by reason of his indorsements.

APPEAL from the Circuit Court for *St. Croix* County.

This action is upon a certain agreement in writing (termed in the complaint a " bond "), executed by the parties

to this action and sixteen others, under their respective hands and seals, dated August 28, 1884, a copy of which is set out in the complaint. The agreement purports to have been entered into by twenty-one persons or firms named therein (including these parties), " each with the others as parties hereto," and is as follows:

" Whereas, the said parties are the stockholders of the Hudson Lumber Company, a corporation organized and existing under the laws of the state of Wisconsin, and doing business at the city of Hudson, in the county of St, Croix and state of Wisconsin; and whereas, the said company is indebted to divers persons in the sum of about $21,000, upon the paper evidencing which indebtedness several of said parties have become responsible as indorsers; and whereas, the said paper is to be renewed from time to time, and said indorsements continued, and new ones given; and whereas, it will be necessary to borrow other amounts for the use of the corporation, and the same can only be secured by the individual indorsement by some of the stockholders of the corporate paper; and whereas, it is only fair that in such events each stockholder should be under guaranty and agreement to indemnify and save harmless, in proportion to his ownership of said stock, such stockholders as are now upon the company's paper, or shall hereafter indorse paper for the benefit of the company and its stockholders:

" Now, therefore, it is agreed by and between the parties above mentioned, each with all the others, and each with such stockholders as shall now be liable upon the company's paper, or shall hereafter become so by indorsement or otherwise, as aforesaid, that each of the said parties will so indemnify, protect, and save harmless the said stockholders now upon the company's paper, or such as shall hereafter assume the liability of indorsers of said company's paper, in proportion of each of said stockholder's ownership of

said stock, and to that end will, upon the demand of any one or more of said stockholders who shall be called upon as indorsers to pay such paper, contribute toward the payment thereof such sum as such party ought to contribute in proportion to the stock held by him; and it is distinctly understood that this agreement of indemnity shall not extend to any indebtedness indorsed by stockholders in excess of the sum of twenty-five thousand dollars." Three of the persons named in the agreement as parties thereto did not sign it. The number of shares in the corporation owned by each signer is set opposite each name. The aggregate is 420 shares, of which number the defendant owned twenty-five shares. The complaint then proceeds to its close as follows: " That at the time of the making of said bond plaintiff was, ever since has been, and now is, an indorser of a large amount of the said Hudson Lumber Company's paper, and that on the 5th day of February, 1890, he was liable on paper, indorsed by him for the benefit of said Hudson Lumber Company, in the sum of nineteen thousand dollars, on two certain promissory notes due from said Hudson Lumber Company to the First National Bank of Hudson, Wis., and that said notes have been protested, and payment thereof duly demanded of him, which said notes have not been paid by said Hudson Lumber Company, or by any persons for it, or any part thereof. Plaintiff further alleges that said notes are what are known as ' bankable paper,' and bear interest at the rate of eight per cent. per annum, and that they are due and become payable every ninety days. Plaintiff further alleges that at the time of the making of the bond hereinbefore set forth this defendant was the owner of twenty-five shares of the stock of said Hudson Lumber Company; that the whole number of shares owned by the parties subscribing said bond was four hundred and twenty shares, and the amount that this de_ fendant ought to contribute toward the payment of said

sum of nineteen thousand dollars is the sum of $1,130.75, with interest thereon from the said 5th day of February, 1890, at the rate of eight per cent. per annum, and the interest this plaintiff will be compelled to pay on such interest up to the time of the judgment herein. Plaintiff further alleges that before the commencement of this action he duly demanded of the said defendant the said sum of $1,130.75 and interest thereon from the said 5th day of February, 1890, amounting at the date of such demand to the sum of $1,141.55, but that defendant has neglected and refused to pay said sum or any part thereof. Wherefore plaintiff demands judgment for said sum of $1,130.75, with interest thereon at the rate of eight per cent. per annum, and for such sums as plaintiff may be compelled to pay as interest in addition to the eight per cent. hereinbefore mentioned."

Defendant demurred to the complaint, alleging as grounds of demurrer (1) the non-joinder as parties to the action of the other persons who signed the agreement; and (2) that the complaint fails to state facts sufficient to constitute a cause of action. On motion of plaintiff the demurrer was stricken off as frivolous, with leave to defendant to answer. The defendant appeals from the order in that behalf.

For the appellant there was a brief by *Bashford & Disney* and *R. H. Start,* and oral argument by *J. W. Bashford* and *R. H. Start.*

*Ray S. Reid,* for the respondent, contended, among other things, that this contract bound the parties to contribute on demand to the payment of paper on which the plaintiff was liable as indorser, and the action could be maintained by him without first paying the amount for which he is liable. *Carman v. Noble,* 9 Pa. St. 371; *Jones v. Childs,* 8 Nev. 124; *Wright v. Whiting,* 40 Barb. 240; *Belloni v. Freeborn,* 63 N. Y. 388; *Furnas v. Durgin,* 119 Mass. 500; *Hall v. Nash,* 10 Mich. 304.

Taylor vs. Coon.

LYON, J. Premising that under the settled practice in this court the order from which this appeal is taken must be treated as an order overruling the demurrer to the complaint, we will consider in their order the propositions urged by counsel against the sufficiency of the complaint.

1. It was suggested in the argument that the order appealed from was made by the judge at chambers, and hence not appealable. If so made, certainly it is not an appealable order; for the statute (R. S. sec. 3069) only gives an appeal from an order made by the court. The motion to strike off the demurrer was noticed before the judge at chambers, and the order recites that the matter came on to be heard at chambers. But it also recites that the hearing was before the court, and, inferentially at least, that it was made by the court. The language of the order is: " The court having heard the argument of the counsel of the respective parties, it is ordered that said demurrer be, and the same is hereby, stricken from the files in this action." This sufficiently shows that the order was made by the court, which, it must be assumed, was in session at Eau Claire, where the order was made, as a special term of the St. Croix county circuit court, in which the action is pending. It must be held, therefore, that the order is appealable.

2. The first ground of the demurrer is the non-joinder as parties to the action of the other parties to the agreement in suit. Although this was not much relied upon in the argument,— perhaps not at all,— it is proper to say that we think the agreement, by any fair and reasonable construction of its terms, is several, as respects each of the parties thereto, and that any one of them who has a several valid claim under it against any other party liable to him upon such claim may maintain a several action therefor against the party so liable, without joining in the action those having like claims, or who are subject to like liability. Hence we find here no defect of parties.

3. Counsel for defendant maintain that the agreement in suit is incomplete, because not executed by all of the persons whose names appear in the body of it as parties thereto; that defendant cannot be held bound by it without his consent until all such parties have executed it; and that, unless facts are pleaded showing such consent, the complaint is defective and demurrable. For the purposes of this case, it may be assumed that these are correct legal propositions. Probably they are. But it is alleged in the complaint that the defendant, "for a good and valuable consideration, made, executed, and delivered to this plaintiff" the agreement in suit. Such delivery is a consent by the defendant that the agreement shall be binding upon him without the signatures of the persons named in the body of the instrument, who did not execute it. Hence the complaint shows that the agreement was fully executed, so far as the defendant is concerned.

4. Counsel for plaintiff claims that the action is within sec. 2675, R. S., which is as follows: "In an action, defense, or counterclaim founded upon an instrument for the payment of money only, it shall be sufficient for the party to give a copy of the instrument, and to state that there is due to him thereon from the adverse party a specified sum, which he claims." Inasmuch as a copy of the agreement is inserted in the complaint, and it is stated therein that there is due the plaintiff from the defendant a specified sum, which the plaintiff claims, if the case is within the statute, that is sufficient, and we need not determine whether, independently of the statute, the complaint states a cause of action. The question is, therefore, is this one of the instruments mentioned in the statute? To support his contention that it is, counsel for plaintiff rely exclusively upon *Coe v. Straus*, 11 Wis. 72. That was an action on a bond or undertaking to procure the release of attached property. The complaint stated a valid cause of action, independently

Taylor vs. Coon.

of the statute under consideration. The ruling of the court that the obligation was "for the payment of money only" seems to have been made with reference to a statute authorizing the entry of judgment by default in an action on such an instrument, without notice of the assessment of damages.   R. S. 1858, ch. 132, sec. 27.

The present case is not distinguishable in principle from that of *Carrington v. Bayley*, 43 Wis. 507, which was an action on a guardian's bond.   It was there held that the bond was not an instrument "for the payment of money only," within the meaning of sec. 24, ch. 125, R. S. 1858, which was the same as sec. 2675 in the present revision. Such is also the ruling of the courts in New York in several cases on similar instruments, under a similar statute, in which cases it was held that the statute only includes actions on instruments for the payment of money only, in which the liability is unconditional, and absolutely fixed and expressed in the instrument.

*Carrington v. Bayley* rules the present case, and, if anything was said in *Coe v. Straus* opposed to the ruling in that case, it must be considered overruled.

5. The complaint sufficiently avers that plaintiff was liable as indorser on the paper of the corporation when the agreement in suit was executed, and still remains so liable. This paper is mentioned in the agreement as "company's paper" and "corporate paper." The terms are used synonymously in the agreement, and manifestly were intended to, and do, include any and all obligations for the payment of money made by the corporation, or for its use and benefit.

6. There is no averment in the complaint that the plaintiff has paid the obligations upon which he was thus liable as indorser, or suffered any loss or damage on account of his indorsements.   Whether such an averment is essential to the statement of a cause of action is the only remaining question to be determined.   The answer thereto depends

upon the interpretation of the agreement. If it contains an indemnity against liability to pay the indorsed paper, there is a breach of the covenant of indemnity as soon as the liability of the indorser to pay the same is fixed, and an averment that he has paid it is not essential to the cause of action. But if it is only an indemnity against loss or damage by reason of such liability there is no breach until payment, or until the plaintiff has suffered some loss or damage by reason of his indorsements. Such payment or loss, being a condition precedent to the right of action, must be averred and proved, or there can be no recovery. All this is elementary law, and is not controverted. We are called upon, therefore, to determine the true character of the indemnity in the agreement under consideration. Is it an indemnity against liability to pay a debt, or only against loss or damage on account of such liability? Counsel for plaintiff maintain that it is an indemnity against liability, while counsel for defendant maintain that it is only an indemnity against loss or damage. These propositions have been discussed by the respective counsel with marked ability, and numerous adjudications have been cited by each in support of his contention. There seems no conflict in the principles decided in the cases referred to, but each case turns upon the language of the particular instrument under consideration. We do not feel called upon to discuss the cases at length, but will proceed to state briefly what we consider the true interpretation of the language of the agreement in controversy. Applying such language to the parties before us, the defendant recited in the agreement that he ought to indemnify and save harmless the plaintiff, on account of his indorsements, to an amount proportionate to the stock owned by him. The defendant then agreed to "indemnify, protect, and save harmless" the plaintiff because of such indorsements in the same proportion, and to that end he covenanted that if plaintiff should be *called*

*upon* as indorser to pay such paper the defendant would contribute towards such payment his proportionate share thereof. The plaintiff had become liable to pay certain obligations of the corporation. As to a proportionate share thereof the defendant covenanted to "indemnify, protect, and save harmless" the plaintiff. There is no express covenant thus to indemnify the plaintiff against mere *liability* to pay such obligations. Under all the cases these words, when so used, create only an indemnity against loss or damage on account of liability, and not against the liability itself. The clause in the covenant, that defendant will contribute should the plaintiff be *called upon* as indorser to pay such paper, does not, we think, alter or increase the obligation of the surety as thereinbefore expressed. In the light of all the other stipulations in the agreement, which so clearly evidence the intention of the parties thereto that the indemnity should only be against loss or damage, we think the subsequent words "called upon to pay," as employed therein, should be construed as the équivalent of "compelled or required to pay." This construction makes the agreement consistent and harmonious in all its parts. It would not be so were we to read the latter clause "asked or requested or pressed to pay."

It must also be remembered that the obligation of a surety is *stricti juris*, and must not be enlarged by mere construction. This whole subject is quite fully discussed in *Thompson v. Taylor*, 30 Wis. 68. That was an action on a bond, one of the conditions of which was that the obligors (the defendants) would save the obligee harmless from all loss or *liability* for or on account of certain judgments. This, standing alone, would clearly be an indemnity against liability. Yet, because of certain other conditions in the bond, the language of which imported only an indemnity against loss, it was held that, notwithstanding the condition first above mentioned, the bond was only for indemnity

against loss. So we hold here that the covenant to pay a proportionate share of the indebtedness the indorser may be called upon to pay (the meaning of which may be somewhat equivocal) must, in the light of the other clauses in the covenant, be interpreted as only an indemnity against loss. *Thompson v. Taylor* is a stronger case for holding that the indemnity was against liability than is this case. We do not care to add anything further to what is there said on the subject. Our conclusion is that the complaint herein is fatally defective, in that it does not aver that the plaintiff has paid the obligations upon which he was indorser, or suffered any loss or damage by reason of his indorsements. It was error, therefore, to strike off the demurrer as frivolous. Such demurrer was well taken, and should have been sustained.

*By the Court.*— The order is reversed, and the cause will be remanded for further proceedings according to law.